UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEANNA MARTHA ROBINSON,<br><br>               Plaintiff,<br><br>    v.<br><br>ALAMEDA COUNTY, et al.,<br><br>               Defendants. | Case No.  12-cv-00730-JCS<br><br>**ORDER GRANTING DEFENDANT ALAMEDA COUNTY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Doc. No. 59** |

## I.    INTRODUCTION

Plaintiff Martha Robinson ("Plaintiff") filed this lawsuit against her former employer, Defendant Alameda County ("Defendant"), alleging age discrimination and harassment in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), § 4(a)(1), 29 U.S.C. § 623 (a)(1), as well as retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).  Defendant filed a Motion for Summary Judgment ("Motion"), contending that Plaintiff has failed to proffer evidence showing a disputed issue of material fact, and therefore, argues Plaintiff's claims for discrimination and retaliation fail as a matter of law.  Finding this case suitable for decision without oral argument pursuant to Local Rule 7-1(b), the Court vacated the motion hearing scheduled for August 5, 2013 at 10:00 a.m.  For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.[1]

//

//

//

---

[1] The parties have stipulated to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.     BACKGROUND

### A.     Factual Background[2]

#### 1.     *Initial Hiring and Psychological Examination*

Plaintiff worked for the County in the Probation Department of Juvenile Hall from 1998 to 2011. Joint Statement of Undisputed Facts (JSUF) ¶ 1; Plaintiff's Complaint ("Compl.") ¶ 12. The County hired Plaintiff in August of 1998; she was forty-seven years old at the time. JSUF ¶¶ 1-2. Initially, Plaintiff was hired as a Group Counselor Intermittent, but this position was later renamed Juvenile Institutional Officer Intermittent ("JIO Intermittent"). *Id.* ¶ 3. Plaintiff asserts that she was the oldest person with this position in the Probation Department of Juvenile Hall, and that she knows this because she personally observed and spoke with other Intermittents, who disclosed their much younger ages. Dkt. No. 72 (Declaration of Roseanna Robinson in Opposition to Alameda County's Motion for Summary Judgment) ("Pl. Decl.") ¶ 2. As a JIO Intermittent, Plaintiff was a member of the union, Probation Peace Officers' Association. *See* JSUF ¶ 5.

JIO Intermittents are responsible for the day-to-day care, custody, and control of juvenile wards who are detained at various facilities in Alameda County Probation Department. *Id.* ¶ 4. Intermittent employees are hired to cover the shifts of regular staff at Juvenile Hall when they take leave from duty. Dkt. No. 62 (Declaration of Debra Licano in Support of Motion for Summary Judgment) ("Licano Decl."), Ex. L (Evaluation). They are required to be available "a minimum of four shifts (32 hours) Sunday through Saturday, … during the time of the greatest need for replacement staff." *Id.* JIO Intermittents are also "expected to be available to work per the contract unless otherwise excused by the Duty Institutional Supervisor II." *Id.*

JIO Intermittents are required to meet the minimum requirements for Peace Officers a set forth in Government Code Section 1031. JSUF ¶ 6. They must be "[f]ound free from any physical, emotional or mental condition which might adversely affect the exercise of the powers of a Peace Officer, as determined by a licensed examining authority in accordance with the California Government Code." Licano Decl., Ex. A. As part of her initial hiring process in 1998,

---

[2] Unless otherwise indicated, the facts in this section were either stipulated to be undisputed or the Court found them to be undisputed.

1    Plaintiff submitted to a psychological examination.  JSUF ¶ 7.  She passed the examination.  *Id.* ¶

2    8.

3          Throughout Plaintiff's employment, Herbert Robinson ("H. Robinson") was one of her

4    supervisors.  JSUF ¶ 9.  Plaintiff states that during her interview, H. Robinson inquired about

5    Plaintiff's age.  Dkt. No. 61 (Declaration of Clarzia Garcia in Support of Motion for Summary

6    Judgment) ("Garcia Decl."), Ex. E (Deposition of Roseanna Martha Robinson) ("Pl. Depo.") at 50.

7    Plaintiff testified at her deposition:

8                It was informal.  They were laughing, joking, and they talked among
            each other.  And that was a part of − I don't know if it was a part of
9            it or not, but − we were all close in age, but they were supervisors.
            And, if I recall correctly, Mr. Robinson asked my age.
10

11   *Id.* at 50:16-20.  Plaintiff also testified in her deposition that when she asked at various times why

12   she was not being promoted, H. Robinson "once told" her that he promoted some people to

13   positions because "they need younger males."  *Id*. at 62:6-7.  Although Plaintiff does not recall

14   exactly when H. Robinson said this, she stated in her deposition that it occurred in 2007 or 2008.

15   Dkt. No. 84 (Declaration of Dorothy in Opposition to Alameda County's Opposition to Motion for

16   Summary Judgment) ("Guillory Decl.") Dkt. No. 86-Ex. I(4) (Pl. Depo.) at 195.

17               **2.      *Sexual Advances, Failure to Promote, and Attendance Issues***

18         According to Plaintiff, during the first week of her employment, Juvenile Institutional

19   Officer II Baker, a married man, began repeatedly propositioning her for a date.  Garcia Decl., Ex.

20   C (Plaintiff's Responses to Defendant's Interrogatories) ("Pl. Resp. Interr.") at 19.  Allegedly,

21   Bake made "offensive" and unwelcomed" comments "over and over," sometimes in the presence

22   of coworkers and supervisors like H. Robinson and Wayne Wilson, until he retired in 2010.  *Id.* at

23   1-2.  Plaintiff claims that she rejected these advances and complained to H. Robinson and Ron

24   Johnson, who are administrators at Juvenile Hall.  *Id.* at 2.  According to Plaintiff, they shrugged

25   off the complaint and did nothing to stop this alleged harassment, responding: "Well, you know

26   Baker. That's Baker." *Id.*

27         Plaintiff also writes in her declaration that from the inception of her employment, she was

28   subjected to sex-based harassment from H. Robinson and another Institutional Supervisor, John

1    Williams. Pl. Decl. ¶ 2. Plaintiff states that she consistently complained to H. Robinson to no

2    avail. *Id*.

3            Plaintiff received a performance evaluation on January 1, 1999 that covered the time

4    period between October 31, 1998 and January 1, 1999. Licano Decl., Ex. B. She received a rating

5    of "meets requirements" for every category covered in the evaluation except "availability," for

6    which she received an "unsatisfactory" rating. *Id*. The evaluator praised her for fostering a

7    mutually beneficial and professional relationship with coworkers. *Id*. The evaluation stated that

8    she performed her job adequately and had a positive relationship with the juveniles entrusted to

9    her. *Id*. However, the evaluator also noted that she had been unavailable for twelve shifts, was

10   late for seven shifts, and had one no-show. *Id*. at 16-17.

11           On February 27, 1999, Robinson received a letter from two of her supervisors noting that

12   she had been late to work eight times and had eleven cancelations. *See* Dkt. No. 63 (Declaration

13   of Herbert Robinson in Support of Motion for Summary Judgment) ("H. Robinson Decl."), Ex. A

14   at 6. On March 1, 1999, an assistant director gave Robinson a memorandum noting that her

15   attendance needed to improve because she was very close to violating the juvenile hall policies

16   and procedures. *Id*.

17           On August 22, 1999, Robinson approached Imelda Anderson ("Anderson"), an

18   Institutional Supervisor II, and asked her why she had not been promoted to a Group Counselor I

19   position, despite that fact that she had been certified for the position. *Id*. Anderson informed her

20   that she was not offered the position because of her excessive tardiness and cancelations due to

21   sick leave. *Id*. Plaintiff told Anderson that she did not agree with the attendance records and

22   planned to challenge their accuracy. *Id*.

23           Plaintiff contends that her complaints about Baker's sexual advances coincided with the

24   time period that she was rejected for promoted to a GC I position. Pl. Resp. Interr. at 20. She

25   claims that many other GC Intermittents were promoted to the position around this time and that

26   Defendant made two external hires to GC I positions. *Id*.

27           Plaintiff received another annual evaluation on February 27, 2000 for the time period of

28   January 1, 1999 to January 1, 2000. Licano Decl., Ex. C at 20. She received an overall evaluation

United States District Court
Northern District of California

4

rating of "meets requirements." *Id.* The evaluator noted that Plaintiff did not take a lead role in daily activities with the minors, and was also late to work six times, "which is unacceptable." *Id.* The evaluator also noted that she "canceled six shifts, mostly due to illness." *Id.*

Plaintiff alleges that H. Robinson and then Assistant Director of Juvenile Hall, George Perkins ("Perkins"), retaliated against her after she complained about harassment. Compl. ¶ 4. Plaintiff states that on July 2, 2000, she wrote a letter to Perkins complaining about the sex-based harassment from John Williams and about H. Robinson's refusal to do anything about it. Pl. Decl. ¶ 4; *see also* Pl. Resp. Interr. at 20. Specifically, Plaintiff claims that Williams told her to get her "big ass" up to Unit D at the Juvenile Facility. Pl. Resp. Interr. at 20; *see also* Guillory Decl., Ex. I (Pl. Depo) at 101. She complained about this incident to George Perkins, who allegedly responded by claiming that the incident never happened. *Id.*; Pl. Decl. ¶ 4. Plaintiff asserts that neither he nor the County took any action to prevent Williams from continuing to harass her. *Id.*

Plaintiff states that in 2000, Wayne Wilson ("Wilson"), an Institutional Supervisor, was subjecting Plaintiff's sister to unwelcomed telephone calls, sexual solicitations, unwelcomed visits to her home, and derogatory sex-based comments. Pl. Resp. Interr. at 20. Plaintiff states that on July 21 2000, she sent a letter to Wilson asking him to stop sexually harassing her sister. Pl. Decl. ¶ 4. This letter was forwarded to H. Robinson, George Perkins, and others. H. Robinson Decl., Ex. J at 38. Plaintiff states that no one acted on this letter. Plaintiff writes that Wilson then began harassing her by monitoring and watching her. Pl. Resp. Interr. at 20.

Plaintiff also states that in 2001, H. Robinson falsely accused Plaintiff of fraudulently reporting time worked in retaliation for Plaintiff's reporting of sexual harassment. Pl. Resp. Interr. at 21. Plaintiff further accuses H. Robinson of harassing her directly by "coming onto her swing shift when he was not scheduled to work, repeatedly yelling at her, balling his fists in a threatening manner and hovering over her, verbally reprimanding Plaintiff in front of the juvenile wards and staff, [and] giving her demeaning directives." *Id.* Plaintiff also explained that H. Robinson would single out Plaintiff to yell at her about things like eating in front of the children. Guillory Decl., Ex. I (Pl. Depo.) at 75.

Plaintiff states that in retaliation for reporting the sexual harassment, H. Robinson told

United States District Court
Northern District of California

1    others that he would never let Plaintiff receive a promotion.  Pl. Resp. Interr. at 21.  In 2001,

2    Plaintiff applied and scored highly for Group Counselor I and Group Counselor III positions, but

3    was not selected for the promotion.  Pl. Resp. Interr. at 21.  She asserts further that even though

4    she was told that the County was not hiring for Group Counselor III positions, Samuel Harris, H.

5    Robinson's relative, was hired two weeks later.  *Id.* at 25.

6        Robinson's annual evaluation from the time period covering January 9, 2000 through

7    January 9, 2001 noted that her job performance "meets requirements."  Licano Decl., Ex. D at 23.

8    However, she was unavailable for seven shifts and was late to work five times.  *Id.*  The evaluator

9    noted that when the issue of her punctuality was raised, Plaintiff denied that she had cancelled any

10   shifts.  *Id.* at 24.

11       On August 30, 2002, Plaintiff received a special evaluation from H. Robinson for the time

12   period of February 1, 2002 through May 1, 2002.  Licano Decl., Ex. E at 27.  In it, H. Robinson

13   gave Plaintiff an overall rating of "unsatisfactory" and noted that she had been unavailable for

14   eleven shifts and was tardy to four shifts.  *Id.*  H. Robinson wrote: "Ms. Robinson needs to

15   improve her availability.  If no improvement is noted in the next 90 day period appropriate

16   corrective action will be taken."  *Id.*

17       Shortly after October 15, 2002, Plaintiff sent a letter to H. Robinson to rebut the February

18   2002 to May 2002 special evaluation.  H. Robinson Dec. ¶ 6.  In the letter, Plaintiff wrote that she

19   could not be at work during the 90-day period prescribed by H. Robinson because as H. Robinson

20   was "well aware of," Plaintiff was not at work under a doctor's care due to an "industrial injury."

21   H. Robinson Decl., Ex. E at 17.  Plaintiff wrote that H. Robinson's special evaluation was "written

22   with the intent to constitution additional stress and harassment."  *Id.*

23       Plaintiff claims that she went on worker's compensation for a year and a half in 2004

24   because of stress caused by hostility at work.  Compl. ¶ 13.  According to Plaintiff, she became

25   traumatized after H. Robinson "verbally abused her by blocking the doorway so that Robinson

26   could not leave, while repeatedly shouting at her, coming close to her with balled fists and

27   threatening to fire her."  *Id.*

28       However, a Workers Compensation ALJ determined that Robinson "did <u>not</u> sustain injury

United States District Court
Northern District of California

arising out of and occurring in the course of her employment to her psyche resulting in high blood pressure." Licano Decl., Ex. K at 20 (emphasis in original). The ALJ found that Robinson's "emotional stress was as a result of a good-faith personnel action and is therefore non-compensable." *Id.*

**3.**     ***Falsification of Time Sheets, Attendance Issues, and Failure to Promote***

Plaintiff alleges that her supervisors would white out information on her evaluations and change the numbers regarding her attendance in order to make it look like her attendance record was worse than it actually was. JSUF ¶ 10. In 2004, Alameda County Internal Affairs investigated accusations regarding falsified timesheets. H. Robinson Dec. ¶ 7. Both Plaintiff and H. Robinson accused each other of falsifying timesheets. *Id.* Internal affairs found both charges to be unsubstantiated. *Id.*

On December 27, 2005, Plaintiff filed a complaint of discrimination with the California Department of Fair Employment and Housing ("DFEH") alleging retaliation and discrimination based on age. Garcia Decl., Ex. D at 27. In the complaint, Plaintiff stated that she had not been promoted to full time work despite submitting numerous applications and that on November 2, 2005, "Melvin Winn (age about 30) and Makensha Gordon (age about late 20's or early 30's) were promoted to Group Counselor I." *Id.* She stated that she was better qualified for the position than either of them, and that she had been discriminated against because of her age. *Id.* The DFEH issued her a right-to-sue letter on December 27, 2005 and the Equal Employment Opportunity Commission ("EEOC") mailed her a right-to-sue letter on February 15, 2006. *Id.* at 74-75.

On January 20, 2006, Plaintiff received an annual evaluation for the time period of June 5, 2005 through June 5, 2006. Licano Decl., Ex. F at 30. During this time period, Plaintiff was unavailable for forty-four shifts and late for thirteen. *Id.* Overall, she received a rating of "needs improvement." *Id.* The evaluator expressed concern regarding Plaintiff's attendance and attitude towards her job. *Id.*

Plaintiff claims that in January 2006, Defendant hired six people in the JIO I position and all were younger than Robinson. Pl. Resp. Interr. at 25. Plaintiff alleges further that one of the

7

1  applicants was hired despite the fact that she out performed him on the examination.  *Id.*

2          On May 16, 2006, Plaintiff received a memorandum from George Perkins, a Senior

3  Institutional Supervisor, stating that her "attendance records show that in a 4-month period, you

4  cancelled 14 shifts and on 7 occasions you did not report or call for assigned shifts."  Licano

5  Decl., Ex. G at 35.  Perkins also noted that Plaintiff was not in compliance with her work contract.

6  *Id.*  He wrote that "[w]hen the intermittent state who is assigned to cover said shifts, cancels, then

7  the problem is compounded."  *Id.*  He informed Plaintiff that he was placing her on a sixty-day

8  special evaluation period and warned that if she did not improve her attendance, he would request

9  that corrective action be taken.  *Id.*

10         On June 21, 2007, G.I. Bivens, an Institutional Supervisor, placed Plaintiff on an employee

11  Performance Improvement Plan (PIP) because of unsatisfactory job performance.  Garcia Decl.,

12  Ex. E at 78.  In a letter to Plaintiff, Bivens explained that "[b]ased on your work performance over

13  the past 3 months since your last evaluation, you continue not to meet performance standards" and

14  the PIP "is to assist you in reducing your performance deficiencies."  *Id.*  Bivens stated that

15  Plaintiff did not share an equal amount of work when working with coworkers and needed to

16  become more involved in the planning and organization of activities for the juvenile wards.  *Id.*

17  He went on to note that Plaintiff's unwillingness to support her peers, coupled with her recent

18  history of cancelling shifts, placed an undue hardship on the department.  *Id.* at 79.  The letter also

19  reads: "A recent incident on Unit 7 led her coworker to write a complaint stating she did not

20  perform any room checks nor would she adequately supervise the minors.  She was more intent to

21  sit behind the desk or watch television."  *Id.*

22         With regard to punctuality and reliability, Bivens stated that during Plaintiff's last

23  evaluation, she had been late thirteen times and was unavailable for shifts on forty-four occasions.

24  *Id.*  Bivens continued to write that during the period of June 9, 2006 to June 7, 2007, records show

25  that Plaintiff was late twenty six times, failed to show up for work twenty-four times, and canceled

26  forty-eight shifts, with only seven of those due to illness.  *Id.*  The records showed that Plaintiff

27  did not report to twenty-seven percent of her shift and was late to fifteen percent of her shifts.  *Id.*

28  Bivens concluded by noting that these shift cancelations and no-shows can make the department

United States District Court
Northern District of California

8

liable for non-compliance under the California Standards Authority. *Id.*

On October 24, 2008, Plaintiff sent an email to Tonia Perteet, a Personnel Officer for the County, asking to be considered for the position of Juvenile Institutional Officer III. Dkt. No. 64 (Declaration of Tonia Perteet-Gavin in Support of Motion for Summary Judgment) ("Perteet Decl."), Ex. A at 5. Perteet responded by describing the interview and hiring process used to fill the position. *Id.* at 4-5. The selection process included an oral interview and only the top five ranking candidates from the interview would be considered for the position. *Id.*

On November 15, 2008, Plaintiff wrote Perteet again because she did not understand why she was not selected for the position. Plaintiff wrote that she "did successfully pass the Oral Examination, and I was among the top five rankings." Perteet Decl., Ex. B at 7. Plaintiff concluded by writing: "Please check your records and contact me." *Id.* Perteet responded by noting that, according to HRS, Robinson was not in the top five rankings and she asked Robinson for more information in order to assist her. *Id.*

### 4. *The Missing Ward Incident, Annual Evaluations, and DFEH Complaint*

On November 22, 2008, a female ward went missing from her assigned room and was later discovered in another female ward's room. JSUF ¶ 12. Although the extent of Plaintiff's involvement in the missing ward incident is in dispute, as a result of the events that occurred, she was suspended for five days. *Id.* ¶ 13; *see* Pl. Decl. ¶ 8; Licano Decl., Ex. N at 39.

Plaintiff claims that she was given the harshest punishment despite the fact she was working under the supervision of an Institutional Supervisor and two Juvenile Institutional Supervisors. Pl. Decl. ¶ 8. Plaintiff maintains that she was not responsible for what happened and was unfairly singled out for harsh treatment. Pl. Depo. at 57; Compl. ¶ 13. However, Defendant contends that Plaintiff received a harsher punishment than other employees because Plaintiff never accepted responsibility for her role in the incident while the other employees did. *See* Licano Decl., Ex. N at 39.

Plaintiff's annual evaluation for the time period of May 28, 2008 through June 1, 2009 stated that she had seven no shows, thirty-nine canceled shifts, and had been late twenty-one times. Licano Decl., Ex. L at 22. The evaluation noted that that her overall rating was "needs

improvement." *Id.* The evaluation stated that Plaintiff met performance standards for every category except punctuality and attendance, which she received an unsatisfactory rating. *Id.* at 23.

Plaintiff's Third Level Supervisor indicated that Robinson had the necessary skills to excel as a Juvenile Institutional Officer. *Id.* at 25. However, the Third Level Supervisor also indicated that her attendance was a problem. *Id.* Plaintiff's Division Director stated that her "attendance is very poor, and needs improvement." *Id.*

On April 24, 2009, Plaintiff wrote a letter to Institutional Officer II J. Reid asking to be placed in a JIO position at Camp Wilmont Sweeney. Pl. Decl., Ex. C at 20. Six days later, she sent a follow up email to Reid to reiterate her interest in the position.

On May 7, 2009, Plaintiff filed a complaint of discrimination with the DFEH alleging retaliation and discrimination based on sex and age. Garcia Decl., Ex. D at 22-23. She received a right-to-sue letter that same day. *Id.* at 25. In the complaint, she reported that in 2005, she filed an internal complaint against H. Robinson and since then, he has retaliated against her by arbitrarily placing her on a ninety-day performance improvement plan (PIP). *Id.* at 23. She also asserted that a younger male employee who also had attendance issues was placed on a PIP for only thirty days. *Id.*

### 5.    *Conditional Job Offer and Psychological Examination by Dr. Tong*

In 2009, the Probation Department attempted to eliminate the JIO Intermittent positions and replace them with Juvenile Institutional Officer I ("JIO I") positions. H. Robinson Dec. ¶ 11. The County encouraged all JIO Intermittents, including Plaintiff, to apply for the new positions. *Id.* Plaintiff applied and was conditionally offered the JIO I position subject to her passing a physical and psychological examination. H. Robinson Dec. ¶ 11; JSUF ¶ 16. The parties have stipulated that all applicants who applied for and were offered the regular JIO I position were subject to a background investigation, physical examination and psychological assessment. JSUF ¶ 14. Despite this stipulation, Robinson contends that other applicants did not have to pass the psychological test and that she was unfairly singled out.

Plaintiff agreed to undergo the psychological evaluation as part of the selection process for the new position on September 7, 2010. Dkt. No. 65 (Declaration of Debra Y.F. Tong) ("Tong

Decl.") ¶ 7.  Dr. Debra Y.F. Tong performed the evaluation.  *Id.*  She is a psychologist licensed to practice in California since 1986.  JSUF ¶ 17.  For over twenty years, she has specialized in Public Safety Pre-Employment Screening Evaluations, conducting the psychological assessment, testing and examining of law enforcement officers pursuant to Government Code of Regulations Section 9050, *et seq.*  *Id.* ¶ 18.  Dr. Tong had conducted hundreds of Public Safety Pre-Employment Screening Evaluations psychological evaluations prior to September 7, 2010.  *Id.* ¶ 19.  She is familiar with the requirements for the Juvenile Institutional Officer position and has conducted approximately 100 or more psychological evaluations for that specific position.  *Id.* ¶ 20.

As part of Dr. Tong's psychological evaluation, Plaintiff completed a personal history questioner and was given standardized tests to complete.  *Id.* ¶ 21.  Dr. Tong's evaluation involves testing that requires Plaintiff to respond to written prompts based on standardized instructions.  *Id.* ¶ 22.  Dr. Tong's Office Manager administered the test materials and acted as a proctor during the testing.  *Id.* ¶ 23.  Plaintiff's test answers were marked on a Scantron sheet and scanned through a computer to be compared to an answer key provided by the test's publisher.  *Id.* ¶ 24.

During the interview portion of the evaluation, Plaintiff also indicated that she had a long history of having difficulty with teachers and supervisors, which she blamed on racism and harassment.  Tong Decl. ¶ 14.  Robinson also told Dr. Tong that she received reprimands and was placed on a PIP for tardiness, but that her supervisor fabricated the claims of tardiness.  JSUF ¶ 25.  Robinson also denied any responsibility for the incident in which the juvenile ward hid in another ward's room.  *Id.* ¶ 26.

### 6.   *Failure of the Psychological Examination and Inability to Work*

Dr. Tong concluded that Robinson was "Poorly Suited" for the JIO I position.  Tong Dec. ¶ 24.  "Poorly Suited" means that Robinson had personal traits and/or personal history that were "expected to significantly interfere with the performance of essential job functions."  *Id.* ¶ 25.  Dr. Tong concluded that Robinson did not meet the minimum suitability requirements for the position of JIO based on her psychological evaluation and recommended Robinson as a psychological "FAIL" with the Alameda County Probation Department.  *Id.* ¶ 24.

Plaintiff claims that H. Robinson intercepted Dr. Tong's report and used the opportunity to

11

make sure that she failed the test.  Guillory Decl., Ex. I (Pl. Depo.) at 222-23.  Plaintiff explains

that after the psychological evaluation, Faith Batchen was in possession of the report on Friday,

January 8.  *Id*. at 222:9-10.  Ms. Batchen told Plaintiff that she had received all of her documents

and was forwarding them to Human Resources.  *Id*. at 222:18.  Ms. Batchen told Plaintiff "good

luck," "which indicated to [Plaintiff] that [she] had passed everything."  *Id*.

      Plaintiff called Human Resources on the following Tuesday, but the HR personnel

indicated to Plaintiff that they were not in possession of her materials.  *Id*. at 223:1-4.  When

Plaintiff called staffing on Friday to get her assignments, staffing told her that H. Robinson

instructed them that Plaintiff was not to work.  *Id*. at 223:6-8.  When she asked why, Plaintiff was

told it was "because of a test or something that you didn't pass."  *Id*. at 223:10-11.  From this

interaction, Plaintiff inferred that H. Robinson intercepted her test results because no one besides

Dr. Tong, and perhaps Faith Batchen, should have known that Plaintiff failed her psychological

examination.  *Id*. at 223:17-20.

      On January 11, 2011, Plaintiff was informed that she would not be hired for the JIO I

position because of the psychological examination conducted by Dr. Tong.  Pl. Decl. ¶ 8.  William

Fenton ("Fenton"), Assistant Chief Probation Officer, wrote Plaintiff to inform her that her "hiring

process has been terminated" because she did not meet all ten of the "P.O.S.T. Job Descriptions

and/or the minimum requirements for a Juvenile Institutional Officer."  Pl. Decl., Ex. F at 9.  He

concluded by writing: "Due to the confidential nature of the background investigation, only this

limited information will be shared with you.  State law prohibits us from disclosing detailed

information to you."  *Id*.  Plaintiff inferred that she was not qualified for the position because she

failed her psychological examination.  *See* Pl. Decl. ¶ 8.

      On January 26, 2011, Dennis Handis ("Handis"), Interim Chief Probation Officer, wrote a

letter to Plaintiff explaining that she would no longer be placed on the work schedule for JIO

Intermittents.  H. Robinson Decl., Ex. H at 34.  In the letter, Handis noted that Plaintiff was

previously informed that she did not meet all ten of the "P.O.S.T. Job Descriptions and/or

minimum requirements" for a JIO position.  *Id.*  The letter also reads:

      The Department is considering the implications of your having failed

1

> to meet the minimum qualifications.  In the interim, the Department
> has elected to not place you on the schedule.  Pursuant to the
> Sideletter of Agreement dated October 5, 2010, you will be
> scheduled in the future on a service-as-needed basis should it be
> appropriate to do so.

2

3

4   H. Robinson Decl., Ex. H at 34.  Plaintiff was told that she was not qualified to work as a JIO

5   Intermittent because of Dr. Tong's psychological evaluation.  Pl. Decl. ¶ 8.

6              **7.   *2011 Discrimination Complaints and Failure to Promote***

7         On May 4, 2011, Robinson filed a discrimination complaint with the DFEH claiming that

8   she was terminated, harassed, and denied employment, promotion, and equal pay by H. Robinson

9   and Defendant because of sex, age, disability, retaliation, association, national origin, race, and for

10  being a whistle blower.  Garcia Decl., Ex. E at 84.  In the complaint to the DFEH, Robinson

11  writes: "I have been denied promotion due to age and gender discrimination.  I have been denied

12  (present) employment due to age, gender discrimination and retaliation for filing complaints as

13  well as whistle blowing."  *Id*.  The DFEH issued Plaintiff a right-to-sue letter on May 16, 2011.

14  JSUF ¶ 31.  On October 27, 2011, Plaintiff sent a letter to Probation Chief David Muhammad

15  ("Muhammad") to notify him of the complaint.  Pl. Decl. ¶ 4; Pl. Decl., Ex. B at 18.

16        On September 19, 2011, Plaintiff applied again for a JIO I position.  Pl. Decl., Ex. C at 12.

17  She asserts in her declaration that she applied for another promotional JIO I position but the

18  department refused to process that application.  Pl. Decl. ¶ 8.

19        On October 3, 2011, the psychologist Plaintiff had been seeing in the year since she failed

20  her psychological examination, Dr. John Conger, wrote a handwritten note regarding Plaintiff's

21  condition.  The note from Dr. Conger reads:

22              I have consulted with Roseanna Robinson [] and find her
              psychologically competent to work and indeed, work under stressful
23              conditions.  As well she will be seeing me in supportive therapy for
              a while to be assured that any difficulties can properly be addressed.
24

25  Guillory Decl. Ex. J.  On October 19, 2011, Plaintiff's attorney wrote a letter to the County and

26  attached this note from Dr. Conger.  Plaintiff's attorney indicated that this note constituted

27  "independent corroboration of the fact that [Plaintiff] is qualified to work," and urged the County

28  to "return [Plaintiff] to work immediately."  *Id*.

United States District Court
Northern District of California

13

On October 19, 2011, Plaintiff also filed a complaint with the EEOC which incorporated her May 4, 2011 complaint to the DFEH.  Garcia Decl., Ex. E (Operative EEOC Complaint) at 82. On the EEOC form, Plaintiff checked the boxes to allege discrimination on the basis of sex, color, race, age, disability, as well as retaliation.  *Id.*  Plaintiff also attached her May 4, 2011 complaint to the DFEH, wherein Plaintiff wrote: "I have been denied promotion due to age and gender discrimination.  I have been denied (present) employment due to age, gender discrimination and retaliation for filing complaints as well as whistle blowing."  Garcia Decl., Ex. E at 84.  Plaintiff received a right-to-sue letter on January 10, 2012.  JSUF ¶ 32. Garcia Decl., Ex. E at 84.

### 8.    *Efforts to Attain Placement in Another Position*

After the County refused to schedule Plaintiff for work as a JIO I or Intermittent, she tried to work for the County in another capacity.  *See* Perteet Decl., Ex. C.  On January 25, 2012, Plaintiff met with a Personnel Officer for the County, Tonia Perteet, to discuss the interactive process to find an alternative position for Plaintiff given that she was no longer qualified to work as a Juvenile Institutional Officer.  Perteet Decl. ¶ 6 and Ex. D thereto.

On January 30, 2012, Perteet sent Plaintiff an email in an effort to summarize their previous conversation and also provide Plaintiff with additional information regarding future employment with the County.  Perteet Dec., Ex. D at 12.  Perteet wrote that although Plaintiff does not currently meet the minimum qualifications for JIO Intermittent, the County was going to search internally for an alternate position.  *Id.*  In addition, Perteet wrote:

> . . . we discussed that while you are engaged in the interactive process the Department would make an effort to locate a Temporary Modified Duty assignment.  Should a Temporary Modified Duty assignment become available, you will be scheduled for thirty-two (32) hours per week, based on you service-as-needed (SAN) employment status.  You expressed concern that you were entitled to a forty (40) hours per week schedule, regardless of your SAN status. I advised you that according to you classification, the standard hours for a Juvenile Institutional Officer Intermittent is thirty-two (32) hours per week."

*Id.*  Perteet also wrote that "in order to be considered for an alternate position, you must meet the minimum qualifications for the position."  *Id.* at 13.  Perteet reiterated that Plaintiff will be

1   contacted every Thursday to review the results of the next available vacancy report.  *Id.*  She

2   concluded by noting that, "[a]s agreed, you will inform me by Friday, February 3, 2012 of your

3   decision to continue voluntarily participating in the interactive process for permanent alternative

4   job search."  *Id.*

5         After Perteet and Robinson talked on February 3, 2012, Perteet wrote Robinson three days

6   later to confirm that she has "elected to decline and waive her rights to pursue a Reasonable

7   Accommodation, or pursue permanent alternate position with" the County.  Perteet Decl., Ex. E at

8   15.

9                    **9.    *Internal Affairs Investigation and Termination***

10        After Plaintiff was suspended for her involvement in the missing ward incident, Plaintiff

11   appealed her suspension to the Alameda County Civil Service Commission.  Licano Decl., Ex. N

12   at 31-32.  On October 17, 2011, after a multi-day hearing, an administrative law judge upheld her

13   suspension.  *Id.* at 41; JSUF ¶ 13.

14        While her appeal was still ongoing, JIO Michael Toy ("Toy"), who was involved in the

15   missing ward incident, testified at the hearing.  Licano Decl., Ex. O at 43.  On July 20, 2011, while

16   Toy waited to give his testimony, he and Plaintiff had an exchange.  *Id.*  Although accounts of the

17   exchange differ, at some point Plaintiff said to Toy: "don't throw me under the bus."  *Id.* at 45.

18   Toy believed the exchange was threatening, but Plaintiff maintains that it was innocent.  *Id.*

19        Plaintiff claims that Toy initiated the conversation and that it was brief and lighthearted in

20   nature.  Pl. Depo. at 58-59.  According to Plaintiff, she engaged Toy in friendly banter and she

21   mentioned off-handedly that he should not throw her under the bus.  *Id.*  Then they laughed and

22   parted ways.  *Id.*  Plaintiff explained that she mentioned this to Toy simply to express her own

23   feelings about the situation and that her comments had nothing to do with Toy.  Licano Decl., Ex.

24   O at 45.

25        Moreover, Plaintiff contends that an eyewitness, Stacy Jones ("Jones"), attested to

26   Plaintiff's side of the story, but that the County discounted Jones's statement and used the alleged

27   threat to unfairly terminate her.  Pl. Decl. ¶ 8.  On January 1, 2012, after the ALJ upheld the

28   Plaintiff's suspension, Jones submitted an affidavit in support of Plaintiff's version of the events.

Pl. Decl., Ex. F at 353.  The affidavit reads in its entirety:

> I Stacy Jones do solemnly affirm to the best of my knowledge that statements below are true.  On or about July 21, 2011 I was at the court house to testify.  Roseanna and I were separated and came up on different elevators.  I was standing at the door when Roseanna said "Hi Toy. Hope you don't throw me under the bus today. See ya."  With a friendly tone.

*Id.*

Toy, however, claimed that Plaintiff threatened him in an effort to influence his testimony. Licano Decl., Ex. O at 43.  To him, Plaintiff's tone was serious enough that he reported the incident to Internal Affairs Supervisor Craig Emmons and Deputy Counsel Jason Lauren.  *Id.*  He contends that Plaintiff looked directly at him, pointer her finger, and warned him not to testify against her.  *Id.*  He came to believe that he might suffer consequences as a result of his testimony. *Id.*

The alleged threat spurred an internal affairs investigation.  *Id.*  On June 12, 2012, Acting Chief Probation Officer LaDonna Harris ("Harris") issued Plaintiff a notice of proposed disciplinary action, which recommended that Plaintiff be terminated.  *Id.* at 43-49.  In the notice, Harris made several finding regarding Plaintiff's various violations.

First, Harris found that discipline was warranted pursuant to Civil Service Rule 210(g) because Plaintiff had been "willfully disobedient."  Licano Decl., Ex. O at 44.  This is because she spoke with Toy even though she had been directed not to talk to anyone who was involved in the case, other than her representative or the internal affairs investigators.  *Id.*  Moreover, Plaintiff had signed a "Confidentiality Advisement Form" admonishing her of this.  *Id.*

Second, Harris found that discipline was warranted pursuant to Civil Service Rules 2104(j) and 2104(n) because Plaintiff had exhibited "dishonesty" and "discourteous treatment of a fellow employee."  *Id.*  Harris reached this conclusion because the internal affairs investigators accepted Toy's account of the exchange, which differed significantly from Plaintiff's.  *Id.* at 45.  The investigators concluded that Toy was credible because he had a reputation for honesty, did not have a motivation to lie about what took place, documented and reported the incident right away, testified about the incident under oath, and his account of the events remained consistent over

16

time. *Id.*

On the other hand, Harris found that Plaintiff had a motivation to lie because admitting the truth could affect the outcome of her appeal and result in further disciplinary action. *Id.* She also noted that Plaintiff deflected blame onto others and painted herself as the victim and Toy as the villain. *Id.* With regard to Jones, Harris noted that two letters were sent to Plaintiff asking for Jones's address so that the investigator could interview her as a witness. *Id.* at 46. When Plaintiff replied to these requests, she gave an incomplete address, so Jones could not be contacted. *Id.* at 47. Harris also found that Plaintiff's testimony during the hearing about Jones was not credible because Plaintiff account of the events seemed confused and contradictory. *Id.*

Third, Harris found that discipline was "warranted pursuant to Civil Service Rule 2104(q), 'any failure of good behavior or acts either during or outside of office hours which are incompatible with or inimical to the public service." *Id.* Harris began by noting that pursuant to section 136.1 of the California Penal Code, "[i]t is a public offence, punishable by imprisonment, to knowingly and maliciously attempt to prevent or dissuade any witness from giving testimony at any proceeding authorized by law." *Id.* at 47-48. Harris found that during Plaintiff's interaction with Toy, she said in a somber tone: "Hey Toy, if you throw me under the bus it's going to be bad for you. You hear me; it's going to be bad for you." *Id.* at 47. Harris noted that, as a sworn peace officer, Plaintiff is expected to uphold the law. *Id.* She concluded by noting that Plaintiff's behavior in this matter was totally inappropriate and incompatible with the mission of the Alameda County Probation Department. *Id.* at 48.

On April 26, 2013, Plaintiff's position as a JIO Intermittent was terminated. Pl. Decl., Ex. F at 22-23. Harris sent Plaintiff a letter informing her that the previously proposed disciplinary order stands and that Plaintiff is being terminated because of her conduct during the interaction with Toy. *See Id.*

### B.    Procedural History

Plaintiff filed the instant action on February 14, 2012, prior to her termination but after she had stopped receiving shifts and was denied a promotion to the JIO I position due to failing the psychological examination. Initially, Plaintiff's Complaint included five causes of action against

United States District Court
Northern District of California

17

four defendants, including Alameda County, Dr. Debra Y.F. Tong, H. Robinson and Micheal Toy. *Id*. Two of the defendants, Toy and H. Robinson, filed a motion to dismiss, and Defendant Toy also filed a motion to strike. Dkt. Nos. 10-11. On June 21, 2012, the Court granted both motions and dismissed the fifth cause of action against Defendants Toy and Robinson with prejudice. Dkt. No. 29.

On May 15, 2013, the parties filed a stipulation to dismiss Dr. Debra Y.R. Tong as a defendant in this lawsuit. Dkt. No. 55. The Court granted the stipulation and Defendant Tong was dismissed form this case on May 17, 2013. Dkt. No. 56. Thus, the third and fourth causes of action in the Complaint asserted against Defendant Tong were also dismissed.

The remaining causes of action in this lawsuit are limited to claims 1 and 2 against Defendant Alameda County only. Claim 1 alleges discrimination and harassment on account of Plaintiff's of age in violation of the ADEA. Claim 2 alleges that Plaintiff was retaliated against in violation of Title VII.

### C.    Defendant's Motion for Summary Judgment

Defendant Alameda County filed its Motion for Summary Judgment on June 7, 2013. Dkt. No. 59 (Defendant's Motion for Summary Judgment, or in the Alternative, Summary Adjudication) ("Def.'s Motion"). First, Defendant argues that the vast majority of Plaintiff's allegations are time-barred by the applicable statute of limitations, and that the actionable period in this case begins 300 days before Plaintiff's filed her complaint with the DFEH on October 19, 2011.

Defendant also argues that Plaintiff has failed to present any evidence to show there is a disputed issue of material fact supporting her claims for discrimination and retaliation arising out of her allegations within the statutory period. With respect to Plaintiff's claim for age discrimination in violation of the ADEA, Defendant contends that Plaintiff was not promoted to the JIO I position because she failed her psychological assessment, not because she was discriminated against on the basis of her age. Defendant also points to the Internal Affairs Investigation regarding Plaintiff's encounter with Michael Toy as a reason for not continuing Plaintiff's employment. Defendant also argues that no adverse employment action was taken

18

1    when Plaintiff was required to report to work on time.  Defendant further contends that Plaintiff

2    has not submitted evidence to support an age-based harassment claim.

3        With respect to Plaintiff's claim for retaliation in violation of Title VII, Defendant argues

4    that there is no evidence of retaliation within the statutory filing period.  Specifically, Defendant

5    contends that the only complaints Plaintiff made that were in the actionable period was her

6    October 19, 2011 EEOC complaint.  Nevertheless, Defendant argues these complaints cannot form

7    the basis of Plaintiff's retaliation claims because the adverse employment actions were taken

8    before Plaintiff filed these complaints.

9        **D.    Plaintiff's Opposition**

10       Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment.  Dkt. No. 71

11   (Plaintiff Roseanna Robinson's Points and Authorities in Opposition to Alameda County's Motion

12   for Summary Judgment) ("Pl. Opp.").  Plaintiff does not address Defendant's argument that the

13   majority of allegations supporting her claims are time-barred and non-actionable, and instead

14   relies on specific events which are outside what Defendant argues is the actionable time period.

15       In support of her age discrimination claim, Plaintiff "elects" to present "direct evidence of

16   discrimination" which includes: (1) Plaintiff's status as the oldest JIO Intermittent; (2) H.

17   Robinson's inquiry into Plaintiff's age at Plaintiff's interview in 1998; (3) H. Robinson's

18   comment that he needed to promote younger males in 2007 or 2008; and (4) the County's

19   adoption of a policy in 2009 to require only some JIO Intermittents to pass a psychological

20   examination after they had already passed an initial exam.

21       Plaintiff also contends the evidence shows that her performance record was artificially

22   manufactured to disqualify Robinson as a viable candidate for promotion.  Plaintiff argues that her

23   timesheets were altered, her shifts were whited out, and her superiors recorded her as a no-show

24   after she showed up to work.  Plaintiff contends that she need not present any corroborating

25   evidence to support her own assertions that this occurred in order to show there is a disputed issue

26   of material fact.

27       Plaintiff contends the County discriminated against her by making her take the

28   psychological examination while excusing younger JIO Intermittents from doing the same.

United States District Court
Northern District of California

19

1   Plaintiff also argues that H. Robinson intercepted the results of her psychological examination

2   before they reached human resources, which allows a jury to conclude that H. Robinson

3   influenced the results of her examination.  Plaintiff further contends that the County discriminated

4   against her by failing to promote her after the results of her psychological examination expired and

5   were no longer valid.

6        Plaintiff also alleges that she has a new basis for her age discrimination and retaliation

7   claims since the filing of the Complaint in this action.  Plaintiff argues that the County believed

8   the word of a younger employee who claimed Plaintiff threatened him over Plaintiff and a witness

9   who is about Plaintiff's age.  Plaintiff's own declaration and deposition purportedly substantiate

10   this new allegation.

11        In support of her retaliation claim, Plaintiff argues that she establishes a prima facie case

12   because: (1) she engaged in protected activity by making internal and external complaints about

13   discrimination and harassment in the workplace; (2) she suffered an adverse employment action

14   when she stopped receiving shifts and was denied a promotion as a JIO I; and (3) there is a causal

15   link because the protected activity occurred in close proximity to the adverse employment action,

16   the relevant County supervisors were aware of Plaintiff's complaints, and because the male

17   supervisors exhibited gender-based and age-based animus.  Plaintiff also argues that she has

18   proffered sufficient evidence from which a reasonable jury could conclude that the County's

19   purported nondiscriminatory and nonretaliatory reasons for undertaking the adverse employment

20   actions are pretextual.

21        **E.      Defendant's Reply**

22        Defendant also filed a Reply in support of its Motion for Summary Judgment.  Dkt. No. 94

23   (Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment, or in the

24   Alternative, Summary Adjudication) ("Def. Reply").  In addition to reiterating the same arguments

25   that are in Defendant's opening brief, Defendant makes several evidentiary objections to the

26   evidence submitted by Plaintiff.  Defendant contends that several pieces of the evidence submitted

27   by Plaintiffs is inadmissible hearsay, conclusory, lacks personal knowledge or is not properly

28   authenticated.  Defendant also argues that Plaintiff did not present her evidence in a proper or

usable format because the evidence is unorganized and lacks proper citation, and that Plaintiff fails to identify with reasonable particularity the exhibits supporting her allegations.  Defendant asserts eleven evidentiary objections with respect to specific portions of Plaintiff's evidence.

## III.    PLAINTIFF'S EVIDENCE

The Court declines to rule on the evidentiary objections to Plaintiff's evidence submitted in Defendant's Reply.  Defendant's evidentiary objections are intertwined with Defendant's arguments on the merits.  Because Plaintiff's claims cannot survive Defendant's Motion for Summary Judgment, discussion of Defendant's specific evidentiary objections is unnecessary.

The Court nonetheless recognizes that Plaintiff's evidence is wholly inadequate.  Plaintiff violated this Court's standing orders by failing to submit timely chambers copies of any of the documents filed on the electronic filing system, including Plaintiff's Opposition and all evidence in support.  The lack of chambers copies is significant in light of the fact the evidence submitted on the electronic filing system is not labeled in a manner that allows one to know the title or contents of the filed document.  Because Plaintiff cites to the title and contents of her evidence rather than by document number, it is difficult to discern the correct document Plaintiff intended to cite.  Plaintiff also fails to cite specific portions of evidence in support of her various propositions. Instead, Plaintiff purports to support a single conclusory proposition with a string cite to large segments of evidence which, more often than not, fail to support the proposition with any detail or further explanation.

## IV.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  On summary judgment, the court

United States District Court
Northern District of California

draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

## V.       DISCUSSION

Before discussing the merits of Plaintiff's discrimination and retaliation claims, the Court must determine which allegations in the Complaint are actionable. There are two threshold issues in this regard. The Court must first determine the applicable statutory period and whether the alleged discriminatory and retaliatory acts occurring before this statutory period are time-barred. The Court must then determine whether the events that occurred after Plaintiff filed her complaint with the EEOC may be considered in this lawsuit; in other words, whether Plaintiff exhausted her administrative remedies. After clarifying the scope of Plaintiff's actionable allegations, the Court considers whether Defendant is entitled to summary judgment on Plaintiff's discrimination and retaliation claims.

### A.       Whether Plaintiff's Allegations are Time-Barred

#### 1.       *Applicable Statutory Period*

To proceed with an action under the Title VII or ADEA, a plaintiff must bring an employment discrimination charge with the EEOC either 180 or 300 days after an alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626.

Title VII requires that a complainant file a charge with the EEOC within 180 days of an alleged discriminatory act, unless the complainant initially instituted proceedings with a state or local agency, such as California's DFEH, in which case the EEOC charge must be filed within 300 days. 42 U.S.C. § 2000e-5(e)(1). Because Plaintiff filed a complaint with the DFEH on May 4, 2011, the 300-day limitation period applies to Plaintiff's EEOC complaint filed on October 19, 2011. Doc. 61-1, Ex. E at 82; *see Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000), overruled on other grounds by *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194-96 (9th Cir. 2001).

Under the ADEA, a state "employee who believes [she] has been discriminated against on the basis of age must file a complaint with the EEOC within 180 days of the alleged discrimination, or 300 days in a deferral state." *Forester v. Chertoff*, 500 F.3d 920, 924 (9th Cir. 2007) (citing 29 U.S.C. § 626(d)). California is a deferral state. *Josephs v. Pac. Bell*, 443 F.3d

22

1 1050, 1054 (9th Cir. 2006); *Bouman v. Block*, 940 F.2d 1211, 1219-20 (9th Cir. 1991).

2 Accordingly, the 300-day limitation period applies to Plaintiff's ADEA claim as well.

3       In order to bring a civil action under either statute, a plaintiff must file the action within

4 ninety days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1); 29

5 U.S.C. § 626(e). "This filing period is a statute of limitations." *Edwards v. Occidental Chem.*

6 *Corp.*, 892 F.2d 1442, 1445 (9th Cir. 1990). Also, an employee must wait 60 days after filing a

7 complaint with the EEOC before bringing an action in district court under the ADEA. 29 U.S.C. §

8 626(d)(1).

9       Plaintiff brought the present action under both the ADEA and Title VII. She filed a

10 complaint with the DFEH on October 19, 2011. Doc. 61-1, Ex. E at 82. In the complaint,

11 Plaintiff alleged discrimination by Defendant based on age, race, color, sex, disability, and

12 retaliation. *Id.* The EEOC issued a right-to-sue letter on January 10, 2012. JSUF ¶ 32. Plaintiff

13 filed this case on February 14, 2012. *Id.* ¶ 33.

14       Although Plaintiff received several right-to-sue letters from the EEOC, only the letter

15 dated January 10, 2012 comes within the ninety-day period prior to the filing of this lawsuit on

16 February 14, 2012. *See* JSUF ¶ 32. The relevant statutory time period begins 300 days before

17 October 19, 2011, the date Plaintiff filed the complaint triggering the January 10, 2012 right-to-

18 sue letter. *See* Garcia Decl., Ex. E (Operative EEOC Complaint) at 82; *see also Nat'l R.R.*

19 *Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002). Therefore, the actionable time period

20 beings with December 23, 2010, which is 300 days before Plaintiff filed the complaint with the

21 EEOC on October 19, 2011.[3]

22                 **2.**    *Plaintiff's Time-Barred Allegations*

23       Although Plaintiff fails to make any argument with respect to her time-barred allegations,

24 the Court nonetheless considers whether the allegations regarding discriminatory and retaliatory

25 acts taking place before the statutory time period are still actionable under the continuing

26 violations doctrine. The Court concludes that they are not.

27

28       [3] Any action based on the May 4, 2011 DFEH complaint is time-barred as Plaintiff did not file suit within 90 days of May 16, 2011.

United States District Court
Northern District of California

23

In *Morgan*, the Supreme Court reversed the Ninth Circuit's decision holding that certain discriminatory acts taking place before the statutory time period of a Title VII claim were still actionable under the continuing violations doctrine. The Court held that any discrete discriminatory acts taking place prior to the 300 day time period were time-barred:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Morgan*, 536 U.S. at 113.

Since *Morgan*, the Ninth Circuit has explained that a plaintiff may still assert a "pattern-or-practice" claim that is both inside and outside the limitations period. However, the circumstances of such a claim are very limited. "[P]attern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on discriminatory conduct that is widespread throughout a company or that is routine and regular part of the workplace." *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (citing *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

Plaintiff has not presented evidence that the County's discrimination was "widespread throughout [the] company or that is routine and regular part of the workplace." *Id*. To the contrary, the heart of Plaintiff's allegations is that she was singled out by the County, as shown through a series of discriminatory and retaliatory acts that began in the first year of her employment in 1998.

The discrete, allegedly discriminatory and retaliatory acts that took place before December 23, 2010 are time-barred under *Morgan*. For instance, Plaintiff submits an exhibit to her declaration which shows all the promotional positions Plaintiff applied for and was denied. *See*

24

Pl. Decl., Ex. C.  However, even assuming *arguendo* Plaintiff was denied various promotions on account of her age and/or in an effort to retaliate against Plaintiff, such denials are not actionable because they constitute a discrete discriminatory acts for which the statute of limitations has run.

Nevertheless, Plaintiff does identify a few adverse employment actions taken within the statutory period.  For instance, Plaintiff was informed on January 11, 2011 that because she failed the psychological examination, she was not eligible for the JIO Promotion.  On January 26, 2011, Plaintiff was informed she would no longer be scheduled to work as a JIO Intermittent.  *See* Pl. Depo. at 48:22.  Plaintiff also contends that she applied for the JIO I position again in September 2011, but her application was never processed.  Pl. Decl. ¶ 8.  On June 12, 2012, Chief Probation Officer Harris proposed that Plaintiff's employment be terminated due to her encounter with Toy.  Plaintiff asserts that her employment was terminated in April 26, 2013 for this reason.  These allegedly discriminatory adverse employment actions are not time-barred.

Moreover, Plaintiff may also use "prior acts as background evidence" in support of her claim.  *Morgan*, 536 U.S. at 113.  A claim for discrimination or retaliation accrues when a plaintiff becomes aware of the adverse employment discrimination constituting the allegedly discriminatory or retaliatory act.  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1050 (9th Cir. 2008).  Therefore, the fact Plaintiff filed various complaints with the DFEH alleging discrimination before the actionable time period does not render these complaints irrelevant to the Court's analysis.  Rather, these complaints may show why Plaintiff was subjected to retaliation during the statutory time period.  The Court, therefore, rejects Defendant's argument that Plaintiff may only show that she engaged in protected activity during the statutory period.  The question is whether a claim for retaliation accrued within this time frame, i.e. whether Plaintiff was subjected to a retaliatory act at this time.

### B.    Exhaustion of Administrative Remedies

Having determined the appropriate statutory period, the Court now considers whether Plaintiff properly exhausted her administrative remedies.  Plaintiff has exhausted her administrative remedies with regard to the adverse employment actions that occurred before she filed the operative EEOC complaint on October 19, 2011 because she filed "a timely charge with

United States District Court
Northern District of California

the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002).

Nevertheless, two adverse employment actions occurred after Plaintiff filed the October 2011 complaint, both of which stemmed from the encounter with Toy: Harris's recommendation that Plaintiff be terminated in 2012, and Plaintiff's ultimate termination in April of 2013. Licano Decl., Ex. O at 43; Pl. Decl., Ex. F at 22-23. Because these events occurred after Plaintiff filed the October 19, 2011 EEOC complaint, the Court must determine whether Plaintiff properly exhausted her administrative remedies as to these events.

Ordinarily, the specific claims made in district court must be presented to the EEOC because the "jurisdictional scope of [a] plaintiff's court action depends on the scope of the EEOC charge and investigation." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). However, the Court has jurisdiction over allegations of discrimination not included in the plaintiff's administrative charge that "are like or reasonably related" to the allegations contained in the administrative charge. *Id.* (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). This includes "acts of discrimination that occur after the charge is filed." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1082 (9th Cir. 2000).

In determining whether the exhaustion requirement has been satisfied, "it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B.*, 276 F.3d at 1100. "In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Id.* But ultimately, the Court must consider "whether the original EEOC investigation would have encompassed the additional charges." *Shelley v. Geren*, 666 F.3d 599, 606 (9th Cir. 2012).

In the October 19, 2011 complaint, Plaintiff merely checked off boxes indicating that she was subject to retaliation and discrimination because of race, color, sex, age, and disability. *See* Garcia Decl., Ex. E at 82. Her complaint also states that the latest act of discrimination occurred on September 1, 2011 and reads, "see attached." *Id.* The document attached to the October 19,

1    2011 EEOC form complaint is Plaintiff's May 4, 2011 complaint to the DFEH.  In the May 4,

2    2011 DFEH complaint, Plaintiff wrote that she was "denied promotion due to age and gender

3    discrimination.  I have been denied (present) employment due to age, gender discrimination and

4    retaliation for filing complaints as well as whistle blowing."  Garcia Decl., Ex. E at 84.

5           The events regarding Plaintiff's encounter with Toy are not "like or reasonably related" to

6    the allegations contained in her EEOC charge filed on October 19, 2011.  *Leong*, 347 F.3d at

7    1122.  The alleged adverse employment actions and complaints that occurred prior to Plaintiff's

8    filing of the October 19, 2011 EEOC complaint centered on harassment, retaliation, and

9    discrimination perpetrated by H. Robinson and Plaintiff's other supervisors at her place of work.

10   By the time Plaintiff filed her October 19, 2011 EEOC complaint, she had been denied promotions

11   and had her shifts cancelled on account of having failed the psychological examination.  An

12   investigation of Plaintiff's allegations in the complaint would not have led the EEOC to also

13   investigate Plaintiff's allegations relating to the Toy incident, which were the result of an internal

14   affairs investigation that flowed from events unrelated to Plaintiff's psychological evaluation.

15          Moreover, the adverse actions flowing from the Toy encounter are detached from the

16   allegations contained in Plaintiff's complaint because of the amount of time that separates them.

17   While the encounter with Toy occurred in July of 2011, prior to filing the October complaint,

18   Plaintiff had not been subject to any adverse employment action based on the encounter with Toy

19   by the time of the October complaint.  Harris first informed Plaintiff of the proposed termination

20   on June 12, 2012, nearly eight months after Plaintiff filed the October 19, 2011 EEOC complaint.

21   Licano Decl., Ex. O at 43.  Plaintiff was not terminated until April 26, 2013, more than a year and

22   a half after she filed the operative complaint.  Pl. Decl., Ex. F at 22-23.

23          An EEOC charge must be clear enough to notify the agency of the legal theory being

24   argued and identify the operative facts at issue.  *Ong v. Cleland,* 642 F.2d 316, 318 (9th Cir.

25   1981).  Plaintiff's overarching legal theory remains consistent with regard to the events that

26   occurred before and after the operative complaint, i.e., that she was the victim of age

27   discrimination and retaliation.  However, the adverse employment actions arising from the Toy

28   encounter are not "so closely related . . . that agency action would be redundant."  *B.K.B.*, 276

1    F.3d at 1102 (citations omitted); *see also Ong*, 642 F.2d at 318 ("Whether a plaintiff has in fact

2    exhausted his or her administrative remedies depends on an analysis of the 'fit' between the

3    administrative charges brought and investigated and the allegations of the subsequent judicial

4    complaint.") (citations omitted).  Consequently, an EEOC investigation would not have

5    discovered the alleged discrimination and retaliation flowing from Plaintiff's proposed and

6    ultimate termination.  Therefore, the Court finds that Plaintiff did not exhaust her administrative

7    remedies with respect to her allegations of discrimination and retaliation relating to her ultimate

8    termination based on the encounter with Toy.

9                                        *        *        *

10          Having addressed Plaintiff's allegations which are outside the statutory period, and

11   Plaintiff's allegations which have not been properly exhausted, there are substantially fewer

12   adverse employment actions upon which Plaintiff may base her discrimination and retaliation

13   claims.  The adverse employment actions which have been properly exhausted and are not time-

14   barred are as follows: (1) Plaintiff was informed on January 11, 2011 that she was not eligible for

15   the JIO Promotion; (2) Plaintiff learned on January 26, 2011 that she would no longer be

16   scheduled to work as a JIO Intermittent; (3) Plaintiff applied for the JIO I position again in

17   September 2011, but her application was never processed.

18          **C.      Discrimination/Harassment in Violation of the ADEA**

19          Plaintiff claims that the County violated the ADEA, "which makes it unlawful for an

20   employer to take adverse action against an employee 'because of such individual's age.'"  *Gross v.*

21   *FBL Fin. Servs., Inc.*, 557 U.S. 167, 170 (2009) (citing 29 U.S.C. § 623(a)).  A plaintiff can show

22   discrimination by presenting either direct evidence or indirect evidence.  *Enlow v. Salem-Keizer*

23   *Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004).  If a plaintiff offers no direct evidence,

24   she may prove discrimination using indirect, or circumstantial evidence, under the burden-shifting

25   framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  *See*

26   *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008).

27          Under the *McDonald Douglas* framework, the plaintiff must establish a prima facie case of

28   discrimination.  If the plaintiff established a prima facie case, the burden of production shifts to the

United States District Court
Northern District of California

1    employer to articulate some legitimate, nondiscriminatory reason for the challenged actions.

2    *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).  If this burden is met, the

3    plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered

4    reasons for their terminations are mere pretext for unlawful discrimination."  *Id.*

5        "To prevail on a claim for age discrimination under the ADEA, a plaintiff must prove at

6    trial that age was the 'but-for' cause of the employer's adverse action."  *Shelley v. Geren*, 666 F.3d

7    599, 607 (9th Cir. 2012) (citing *Gross*, 557 U.S. at 176).  In *Gross*, the Supreme Court held that a

8    mixed-motive instruction could not be given to a jury in an ADEA case.  *Gross*, 557 U.S. at 173.

9    The Court held that the language of ADEA does not contemplate mixed-motive claims and that

10   the plaintiff bears the burden of persuasion at all times to show that age was the "but-for" cause of

11   an employer's adverse action.  *Gross*, 557 U.S. at 173.

12       However, the Ninth Circuit recently held in *Shelley* that the *McDonald Douglas* burden-

13   shifting framework is still the appropriate legal framework for deciding ADEA claims on

14   summary judgment.  *See Shelley*, 666 F.3d at 607-08 (citing *McDonnell Douglas Corp.*, 411 U.S.

15   at 802).  In *Shelley*, the Court explained that because "*Gross* involved a case that had already

16   progressed to trial, it did not address the evidentiary framework applicable to a motion for

17   summary judgment."  *Id.* at 607.  The Court continued to explain that because the *McDonald*

18   *Douglas* test only shifts the burden of production, it does not conflict with *Gross*, which requires

19   that the plaintiff always bear the burden of persuasion.  *See id.* at 607-08 (citing at *Gross*, 557 U.S.

20   at 179).

21                    **1.    *Direct Evidence of Discrimination***

22       In her Opposition, Plaintiff writes that she "elects not to use the *McDonnell Douglas*

23   presumption on her claim of age discrimination and rather chooses to present direct evidence of

24   the employer's discriminatory conduct."  Pl. Opp. at 10:14-16.  However, there is no direct

25   evidence of discrimination in this case.  "Direct evidence, if found to be true, is conclusive of the

26   facts testified to."  *McKenzie v. Risley*, 842 F.2d 1525, 1562 (9th Cir. 1988); *see also Bergene v.*

27   *Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) ("Direct

28   evidence is evidence which, if believed, proves the fact [of discriminatory animus] without

United States District Court
Northern District of California

inference or presumption.").

No evidence cited by Plaintiff meets this standard. The fact Plaintiff was the oldest JIO Intermittent may only constitute indirect evidence of discrimination. The same is true with regard to H. Robinson's inquiry into Plaintiff's age at the time of her interview in 1998, and his comment in 2007 or 2008 that he needed to promote younger males. This is not direct evidence because it does not conclusively establish that Plaintiff was denied a promotion to the JIO I position, or not given shifts in her JIO Intermittent position, because of her age.

### 2.   *Circumstantial Evidence of Discrimination*

#### i.   Prima Facie Case

The next question, therefore, is whether Plaintiff has presented sufficient circumstantial evidence to establish a prima facie case of age discrimination. "A 'prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" *Shelley*, 666 F.3d at 608 (quotations omitted). "In a failure-to-promote case, a plaintiff may establish a prima facie case of discrimination in violation of the ADEA by producing evidence that he or she was (1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the promotion was given to a substantially younger person." *Shelley*, 666 F.3d at 608.

In this case, Plaintiff was denied a promotion to the JIO I position and also stopped receiving shifts in her JIO Intermittent position, which the Court considers tantamount to a discharge for purposes of establishing a prima facie case. Thus, Plaintiff must show that she was qualified for the JIO Intermittent position, and also establish that she was performing her job satisfactorily. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

Plaintiff contends that she is not required to prove that she was qualified for the position as part of her prima facie case. In support of this position, Plaintiff cites *Schnidrig v. Columbia Machine, Inc.*, where the Ninth Circuit stated that a plaintiff's "qualifications are irrelevant to the existence of a prima facie case of discrimination." 80 F.3d 1406, 1410 (9th Cir. 1996). However, the *Schnidrig* court discussed a prima facie case where the plaintiff had successfully presented direct evidence of discrimination. *See id.* at 1409-10. Here, that is not the case. In any event,

United States District Court
Northern District of California

1    subsequent Ninth Circuit authority explicitly requires Plaintiff to show she is "qualified for the

2    position for which an application was submitted" as part of her prima facie case.  *Shelley*, 666 F.3d

3    at 608.

4            Plaintiff cannot establish a prima facie case of age discrimination because she was not

5    qualified for the position of JIO I or JIO Intermittent.  California Government Code § 1031(f)

6    states that all peace officers  must "[b]e found to be free from any physical, emotional, or mental

7    condition that might adversely affect the exercise of the powers of a peace officer."  Cal. Gov't

8    Code § 1031(f).  Plaintiff has stipulated to the fact that to be JIO Intermittent, she was required to

9    meet the minimum requirements for Peace Officers as set forth in California Government Code §

10   1031(f).  JSUF ¶ 6; *see also* Licano Decl., Ex. A (the job description for the JIO Intermittent

11   position tracks the language of § 1031(f)).  Plaintiff does not (and cannot) dispute that the same

12   minimum requirements also apply to the JIO I position.  *See* Cal. Gov't Code § 1031(f).

13           The law also requires that a peace officer's "[e]motional and mental condition" be

14   evaluated by a qualified psychiatrist or physician with specific qualifications.  *Id.* § 1031(f)(2).

15   Dr. Tong met the qualifications necessary to evaluate Plaintiff's emotional and mental condition

16   and gave Plaintiff a failing grade.  *See* JSUF ¶¶ 17-20.  Dr. Tong concluded that Plaintiff was

17   "Poorly Suited" for the JIO I position because she had traits and/or personal history that were

18   "expected to significantly interfere with the performance of essential job functions."  Tong Decl.

19   ¶¶ 24-25.  Dr. Tong explained that Plaintiff was defensive in the interview, showed poor

20   understanding of appropriate boundaries, gave excuses for her tardiness, blamed her past

21   reprimands on others' fabrication of her short-fallings, and denied any responsibility for the

22   incident in which the juvenile ward was found in another ward's room.  *Id.* ¶¶ 27-32.

23           Having failed her psychological examination, Plaintiff was not qualified to be promoted to

24   the position of JIO I or qualified to continue working as a JIO Intermittent.  Nevertheless, Plaintiff

25   contends that she only failed the psychological exam because H. Robinson intercepted and altered

26   Dr. Tong's evaluation.  However, Plaintiff's deposition testimony that H. Robinson intercepted

27   and changed her exam results is speculation, not evidence.  *See* Guillory Decl., Ex. I (Pl. Depo.) at

28   222-23.  Plaintiff cites *SEC v. Phan*, 500 F.3d 895 (9th Cir. 2007), for the proposition that her

31

1    deposition testimony is sufficient to create a disputed issue of material fact with regard to whether

2    H. Robinson altered her evaluation, and that she need not present corroborating evidence.

3    Nevertheless, while *SEC v. Phan* states that uncorroborated declarations and testimony must be

4    considered, it also states that the declarant or witness may only attest to facts within their personal

5    knowledge. *See id.* at 910. Plaintiff did not testify with personal knowledge that H. Robinson

6    intercepted and altered her psychological examination. Rather, she speculates based solely on the

7    fact that H. Robinson was in possession of her psychological examination when Plaintiff thought

8    Human Resources was supposed to be in possession. Guillory Decl., Ex. I (Pl. Depo.) at 222-23.

9    Even if H. Robinson was in possession, that is not evidence that he altered Dr. Tong's independent

10   evaluation. Plaintiff has offered no evidence to rebut Dr. Tong's declaration under oath that the

11   results of Plaintiff's examination were based on her own psychological assessment. Tong Decl. ¶

12   35. There is no evidence that would permit a reasonable factfinder to infer that Plaintiff actually

13   passed her psychological examination and was qualified for the JIO I or JIO Intermittent positions.

14         Plaintiff repeatedly argues that the very fact Plaintiff was required to undergo a

15   psychological evaluation constitutes discrimination because other, younger employees were not

16   similarly subjected to the same condition. However, this argument is contrary to Plaintiff's

17   stipulation that "[a]ll individuals who applied for and were offered the regular JIO I position were

18   subject to a background investigation, physical examination and psychological assessment." JSUF

19   ¶ 14. Accordingly, the Court rejects this argument.

20         Plaintiff applied for the position of JIO I again in September 2011, but Plaintiff states that

21   the department never processed this application. Pl. Decl. ¶ 8. Plaintiff's contends that she should

22   have been hired at this time because the results of her psychological examination expired after one

23   year by its own terms, and she was therefore qualified for the position as of September 7, 2011.

24   This argument is meritless. The fact the results of the evaluation had expired by September 7,

25   2011 does not mean that Plaintiff was qualified after that date. Plaintiff would have had to take

26   and pass another psychological evaluation to be qualified for the position. Cal. Gov't Code §

27   1031(f). Dr. Conger's handwritten note that Plaintiff was "psychologically competent to work" is

28   not sufficient evidence that Plaintiff was qualified for the position of JIO I. There is no evidence

United States District Court
Northern District of California

32

United States District Court
Northern District of California

1    in the record that Dr. Conger even meets the requirements of § 1031(f) to be able to perform a

2    psychological evaluation of Plaintiff.

3           Plaintiff attempts to create disputed issues of material fact which have nothing to do with

4    Plaintiff's psychological examination or whether Plaintiff was qualified for the JIO I or JIO

5    Intermittent positions.  For instance, Plaintiff contends that the County discriminated against her

6    by believing the word of a younger employee, Toy, over Plaintiff's corroborated account that she

7    did not speak to Toy in a threatening manner.  Pl. Decl. ¶ 8; Licano Decl. Ex. 0.  Plaintiff also

8    attempts to create a disputed issue of material fact with regard to whether she was properly

9    reprimanded for excessive tardiness and unavailability.  Since the inception of Plaintiff's

10   employment with the County, Plaintiff had been reprimanded for excessive tardiness and being

11   unavailable to work various shifts.  Plaintiff, however, asserts that her timesheets were

12   intentionally altered to make it look as though she was late or absent in retaliation for her

13   complaints about sexual harassment.  Pl. Decl. ¶ 3.

14          Such factual disputes are immaterial.  "Only disputes over facts that might affect the

15   outcome of the suit under the governing law will properly preclude the entry of summary

16   judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Whether Plaintiff's

17   version of the encounter with Toy is accurate, and whether Plaintiff's time-sheets were altered to

18   make it appear as though Plaintiff was late and unavailable, is irrelevant to the issue of whether

19   Plaintiff was qualified for her position.  Even if Plaintiff's version of these facts is correct,

20   Defendant is still entitled to summary judgment because Plaintiff was not qualified for the JIO I

21   and JIO Intermittent positions after failing the psychological examination.

22                              ii.    Pretext

23          Even if Plaintiff had established a prima facie case of discrimination, Defendant has

24   offered evidence of a non-discriminatory motive: Plaintiff's psychological exam results.  Plaintiff

25   has not submitted sufficient evidence that this reason for the adverse employment action was

26   pretextual.  A plaintiff could "demonstrate pretext 'either directly by persuading the court that a

27   discriminatory reason likely motivated [the County] or indirectly by showing that [the County's]

28   proffered explanation is unworthy of credence.'" *Diaz*, 521 F.3d at 1212 (quoting *Snead v. Metro.*

*Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093-94 (9th Cir. 2001)).  Defendant's legitimate, nondiscriminatory reason for denying Plaintiff a promotion to JIO I and terminating her shifts as a JIO Intermittent was that Plaintiff failed her psychological examination and was no longer qualified to work as JIO I or JIO Intermittent.  Plaintiff did not submit sufficient evidence to permit a reasonable jury to infer that the County's reasons for not promoting Plaintiff were anything other than Plaintiff's failure of the psychological examination.

Plaintiff argues that H. Robinson's two comments about her age show the County's reasons for its adverse actions were pretext for discrimination.  In light of the obvious reason that Plaintiff was unqualified to work after failing her psychological examination, no reasonable jury could find that Plaintiff was discriminated against on the basis of her age.  "To prevail on a claim for age discrimination under the ADEA, a plaintiff must prove at trial that age was the 'but-for' cause of the employer's adverse action."  *Shelley*, 666 F.3d at 607 (citing *Gross*, 557 U.S. at 176).  Even assuming H. Robinson asked Plaintiff her age when she was interviewed in 1998, and told her in 2007 or 2008 that he needed to promote younger males, this is not evidence that, many years later, Defendant was motivated by Plaintiff's age, or that its reason for the adverse employment actions is unworthy of credence.  *Diaz*, 521 F.3d at 1212.

### 3.    Retaliation in Violation of Title VII

Plaintiff also contends that Defendant discriminated against her in retaliation for her numerous complaints to her supervisors and government agencies that she had suffered from age and gender discrimination.  Title VII prohibits employers from retaliating against an employee because that employee expressed opposition to the employer's conduct prohibited by Title VII.  *See* 42 U.S.C. § 2000e-3(a).  Title VII retaliation claims are subject to the same *McDonnell Douglas* burden-shifting framework described above in the context of Plaintiff's discrimination claim under the ADEA.  *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

The Supreme Court recently held that for a plaintiff to succeed on a retaliation claim under Title VII, the plaintiff must show that retaliation was the "but-for" cause of the adverse employment action.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, -- U.S. ----, 133 S. Ct. 2517 (2013).  The plaintiff must show that "the unlawful retaliation would not have occurred in the absence of

United States District Court
Northern District of California

the alleged wrongful action or actions of the employer." *Id.* at 2533.  The Court noted that a more

lenient "causation standard would make it far more difficult to dismiss dubious claims at the

summary judgment stage." *Nassar*, 133 S. Ct. at 2532.

i.   Prima Facie Case

To make out a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in

protected activity; (2) she suffered a materially adverse action; and (3) there was a causal

relationship between the two.  *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417,

422 (9th Cir. 2013).

a)   *Protected Activity*

"An employee engages in protected activity when she opposes an employment practice that

either violates Title VII or that the employee reasonably believes violates that law." *Westendorf*,

712 F.3d at 422.  Filing a charge with the EEOC is a protected activity under Title VII.  *See*

*Thompson v. N. Am. Stainless, LP*, -- U.S. ---, 131 S. Ct. 863, 867 (2011).  Complaining to a

supervisor is also a protected activity under Title VII.  *Ray v. Henderson*, 217 F.3d 1234, 1240 n.3

(9th Cir. 2000) (citing *Equal Employment Opportunity Commission v. Hacienda Hotel*, 881 F.2d

1504, 1514 (9th Cir. 1989)).

Plaintiff made numerous complaints to the EEOC and her supervisors throughout her

employment.  Beginning in 1998, she complained to her supervisors about unwelcome sexual

advances from Juvenile Institutional Officer II Baker.  Pl. Resp. Interr. at 20.  According to

Plaintiff, she was the victim of sexual harassment throughout her employment and complained

about this to H. Robinson.  Pl. Decl. ¶ 2.  In July of 2000, she wrote a letter to Perkins

complaining about the sex-based harassment from John Williams and about H. Robinson's refusal

to do anything about it.  Pl. Decl. ¶ 4.  Around this same time, she sent another letter to H.

Robinson, Perkins, Wilson, and others complaining about Wilson's unwelcome sexual advances

towards Plaintiff's sister.  Pl. Decl. ¶ 4; H. Robinson Decl., Ex. J at 38.  In 2005, Plaintiff filed a

complaint with the DFEH alleging retaliation and discrimination based on age.  Garcia Decl., Ex.

D at 27.  In 2008, Plaintiff wrote Perteet to complain that she was unfairly passed over for a

promotion because she was, in fact, among the top five ranking candidates.  Perteet Decl., Ex. B at

35

7.  Plaintiff filed discrimination complaints with the DFEH in May 2009, May 2011, and October 2011.  Garcia Decl., Ex. D at 22-23; Garcia Decl., Ex. E at 84; Garcia Decl., Ex. E (Operative EEOC Complaint) at 82.  Her protected activities culminated in the filing of this lawsuit in February of 2012.  The foregoing acts constitute protected activity.

Defendant argues that Plaintiff's complaints to the DFEH and EEOC occurring before the statutory period are time-barred and therefore may not be considered protected activity.  Def.'s Motion at 21.  The Court disagrees.  The statute of limitations proscribes Plaintiff from basing her Title VII retaliation claim on retaliatory acts that occurred before the actionable time-frame.  Plaintiff's protected activity, however, is merely "background evidence" that may provide the necessary context explaining retaliatory acts within the actionable statutory period.  *See Morgan*, 536 U.S. at 113.  While protected activity occurring before this time period may be attenuated from the retaliatory act by separation of time, this goes to the causation element of Plaintiff's prima facie case.  There is no categorical bar on protected activity before the statutory period.

### b)       *Adverse employment actions*

The anti-retaliation provision of Title VII covers a broad range of activity.  *Thompson*, 131 S. Ct. at 868.  Adverse employment actions are "not limited to discriminatory actions that affect the terms and conditions of employment."  *Id.* (quotations omitted).  "Rather, Title VII's anti-retaliation provision prohibits any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* (quotations omitted).

As noted above, some of the adverse employment actions that the Plaintiff identifies are within the statutory period.  For instance, Plaintiff was informed on January 11, 2011 that she was not eligible for the JIO Promotion because she failed the psychological examination.  On January 26, 2011, Plaintiff was informed she would no longer be scheduled to work as a JIO Intermittent.  *See* Pl. Depo. at 48:22.  Plaintiff also contends that she applied for the JIO I position against in September 2011, but her application was never processed.  Pl. Decl. ¶ 8.  These actions constitute adverse employment actions and are not time-barred.  Thus, Plaintiff has met the first two elements of her prima facie case of retaliation.

United States District Court
Northern District of California

c)    *Causation*

On summary judgment, causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006). A plaintiff "must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

Plaintiff alleges an actionable adverse employment action that occurred about four-months after she engaged in some kind of protected activity. Plaintiff filed a discrimination complaint on May 4, 2011. Garcia Decl., Ex. E at 84. In September 2011, approximately four months after she filed this complaint, Plaintiff submitted her second application to the JIO I position but her application was never processed. Pl. Decl. ¶ 8.

The Supreme Court has recognized that to establish the causation element of a prima facie case of retaliation only on the basis of "temporal proximity between an employer's knowledge of protected activity and an adverse employment action, … the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (per curiam) (citing cases from circuit courts which held three-month and four-month time lapse is insufficient to infer causation). The circumstances of this case, however, require the Court to consider multiple incidents in which Plaintiff engaged in protected speech. The gravamen of Plaintiff's retaliation complaint is that she was discriminated against after making a series of complaints, spanned over more than a decade, which culminated in her eventual termination. Given the totality of her complaints and her supervisor's awareness of her protected activities, Plaintiff has established the causation element of her prima facie case.

ii.    The County's Legitimate, Nonretaliatory Reason

Once a plaintiff successfully establishes a prima facie case of retaliation, the burden of production shifts to the employer to present a legitimate, nonretaliatory reason for undertaking the adverse employment actions. *Ray*, 217 F.3d at 1240. The County asserts it denied Plaintiff a

37

1   promotion to the JIO I position and cancelled her shifts as a JIO Intermittent because Plaintiff

2   failed her psychological evaluation.  These are legitimate, nonretaliatory reasons for undertaking

3   the adverse employment actions.  Defendant has therefore met its burden of production.  The

4   burden now shifts back to Plaintiff to show that Defendant's proffered reason for undertaking the

5   adverse employment actions is pretext for retaliation.  *Ray*, 217 F.3d at 1240.

iii.   <u>Pretext</u>

7        To show pretext, a plaintiff must "'produce evidence in addition to that which was

8   sufficient for her *prima facie* case in order to rebut'" the defendant's showing.  *Stegall v. Citadel*

9   *Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003) (quoting *Godwin,* 150 F.3d at 1220).  A plaintiff

10   may show pretext either by "directly persuading the court that a discriminatory reason more likely

11   motivated the employer, or indirectly by showing that the employer's proffered explanation is

12   unworthy of credence."  *Id*.  When "the plaintiff proffers only circumstantial evidence that the

13   employer's motives were different from its stated motives," courts require "specific and

14   substantial evidence of pretext to survive summary judgment."  *Id*. (quotations omitted).

15        Plaintiff has not proffered sufficient evidence of pretext.  While she may have established a

16   prima facie case of retaliation on the basis of her numerous complaints, Plaintiff has failed to

17   persuade the Court that these complaints had any relation to the reason she was not promoted to

18   the JIO I position and stopped receiving shifts in her JIO Intermittent position.  In light of

19   Plaintiff's failure of her psychological examination, no reasonable jury could find that Plaintiff

20   would not have been fired "but for" her complaints to the DFEH and EEOC.  *See Nassar*, 133 S.

21   Ct. at 2533.

22        Nor has Plaintiff convinced the Court that Defendant's reasons for its adverse employment

23   actions are unworthy of credence.  Defendants were legally required to deny Plaintiff a promotion

24   to the JIO I position if she failed her psychological examination.  Defendants would have violated

25   state law by allowing Plaintiff to continue her shifts as a JIO Intermittent.  As discussed above,

26   Plaintiff's speculation that H. Robinson intercepted her psychological evaluation and caused her to

27   fail is not evidence.  Consequently, Plaintiff fails to show that Defendant's legitimate, non-

28   discriminatory reasons for taking adverse employment actions are pretextual.

38

**VI.     CONCLUSION**

For the foregoing reasons, Defendant Alameda County's Motion for Summary Judgment is GRANTED.  The Clerk is directed to close the file.[4]

IT IS SO ORDERED.

Dated: August 19, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[4] Defendants' request for the Court to order Plaintiff to undergo an Independent Medical Evaluation is denied without prejudice.